JOURNAL ENTRY AND OPINION
Nancy Levin, a teacher formerly employed by the Mayfield School Board for the 1997-98 school year under a limited teaching contract, appeals from a judgment of the common pleas court affirming the decision of the Mayfield Board of Education not to renew her teaching contract for the 1998-99 school year. Levin urges on appeal that the court abused its discretion when it determined the Mayfield School District complied with the evaluation and nonrenewal procedures mandated by R.C. 3319.11, by R.C. 3319.111, and by the provisions of her collective bargaining agreement. After careful consideration of the facts, we have concluded that the court abused its discretion and, therefore, we vacate the judgment of the court and remand the matter for a determination of back pay due Levin.
The record here reveals that the Mayfield School District employed Levin for the 1996-97 and 1997-98 school years under limited teaching contracts as a Supportive Options Teacher at the Cuyahoga East Vocational Education Consortium where she developed a vocational program for severely mentally retarded and behavior disorder students.
The record further reveals that on January 20, 1998, Principal Karen Chaloupka evaluated Levin, rated her performance as Satisfactory in every category, and noted no deficiencies.
However, on March 3, 1998, Chaloupka held a conference with Levin, Sally Gilmore, a Mayfield Education Association Representative, and Sara Burneson, the Mayfield Personnel Director, to discuss Levin's tardiness, her absences from staff and planning meetings, her failure to submit lesson plans, her negativity concerning staff development activities, and her inappropriate leadership. In a memorandum dated March 4, 1998, Chaloupka detailed deficiencies in Levin's professional development. In part, the memorandum stated:
 The purpose of the conference was to address several aspects of your job performance that do not meet expectations for a teacher in the Mayfield City Schools.
* * *
 All of the conducts discussed in this memorandum show disrespect for your position as a Mayfield teacher and for your colleagues. Professionalism is a very important part of the job, and is expected. Your performance in these areas do not meet the expectations for a teacher in the Mayfield Schools.
On March 30, 1998, Levin responded to Chaloupka's memorandum, addressed each issue, and provided an explanation for her conduct. The next day, March 31, 1998, Chaloupka conducted a second evaluation of Levin and rated her Unsatisfactory in three categories:
 19. Implements board of education and administrative policies, rules, regulations, and directives.
 23. Maintains a positive working relationship with school personnel.
 24. Cooperates with colleagues in continuous staff efforts to improve total program.
Chaloupka explained that Levin needed to arrive at work on time, to attend staff meetings, to submit weekly lesson plans, to maintain a positive working relationship with school personnel, and to participate in building and district staff development activities. In order to improve in these areas, Chaloupka noted that Levin had a daily time schedule, a calendar of scheduled meetings, and a copy of the building policies and procedures.
Thereafter, on April 23, 1998, Levin received a notice from the Mayfield Board of Education that her contract would not be renewed for the upcoming academic year. Levin then requested a statement of circumstances as to the board's decision, which the treasurer provided to her. On May 11, 1998, Levin requested a hearing before the Mayfield Board. Thereafter, in accordance with the statute, the school board treasurer notified Levin of the date of that hearing, and on June 16, 1998, the Mayfield Board affirmed nonrenewal of her contract.
Levin then appealed the board's decision to the common pleas court claiming that the board failed to comply with the evaluation procedures mandated in R.C. 3319.11, R.C. 3319.111, and Article XXXVI of the collective bargaining agreement. The court, in affirming the board's decision, noted that the board had complied with R.C. 3319.111 when it evaluated and non-renewed Levin's contract. Levin now appeals from that judgment and raises one assignment of error for our review. It states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FOUND THAT THE EVALUATION PROCEDURES UTILIZED BY APPELLEE BOARD OF EDUCATION COMPLIED WITH OHIO REVISED CODE SECTIONS 3319.11, 3319.111, AND THE COLLECTIVE BARGAINING AGREEMENT.
Levin argues that the board did not comply with the evaluation procedures in the collective bargaining agreement because Chaloupka did not provide her with suggestions or the opportunity to improve her performance prior to recommending nonrenewal of her contract. The board maintains that it followed the appropriate procedures and contends the court properly affirmed its decision.
R.C. 3319.11(G)(7) states:
 A teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas of the county in which the largest portion of the territory of the school district or service center is located, * * *.
 Notwithstanding section 2506.04 of the Revised Code, the court in an appeal under this division is limited to the determination of procedural errors and to ordering the correction of procedural errors and shall have no jurisdiction to order a board to reemploy a teacher, except * * * when the court determines that evaluation procedures have not been complied with * * * or the board has not given the teacher written notice on or before the thirtieth day of April of its intention not to reemploy the teacher.
Thus, by statute, judicial review is limited to the determination and correction of procedural errors arising in connection with evaluation procedures or to the board's failure to give timely written notice to a teacher of its intent not to re-employ. Since timely written notice is not at issue in this case, our review is confined to the court's determination that the Mayfield Board complied with statutory evaluation procedures.
In Kiel v. Green Local School Dist. Bd. of Edn. (1993),69 Ohio St.3d 149, the court stated in its syllabus:
 R.C. 3319.11 does not provide the procedure that must be followed in an appeal pursuant to subdivision (G)(7). Thus, the procedural provisions of R.C. Chapter 2506 govern.
In Dudukovichv. Lorain Metropolitan Housing Auth. (1979),58 Ohio St.2d 202, the court stated:
 * * * [T]he Court of Common Pleas must weigh the evidence in the record, * * * to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision. * * * The key term is "preponderance." If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision * * *.
Further, in Katz v. Maple Hts. City School Dist. Bd. Of Edn. (1993),87 Ohio App.3d 256, the court stated:
 * * * [R]eview by the court of appeals of a court of common pleas decision is limited to whether the common pleas court abused its discretion. * * *.
In Naylor v. Cardinal Local School Dist. Bd. of Edn. (1994),69 Ohio St.3d 162, the court stated in its syllabus:
 Unless a collective bargaining agreement specifically provides to the contrary, R.C. 3319.111 governs the evaluation of a teacher employed under a limited contract. (Emphasis added).
In Gerner v. Salem City School Dis. Bd. Of Edn. (1994),69 Ohio St.3d 170, the court stated:
 A court in an appeal, however, "is limited to the determination of procedural errors and to ordering the correction of procedural errors." * * *.
* * *
 We do find, however, that R.C. 3319.11(G)(7) does not preclude an award of back pay under every circumstance. The statute allows a court to "order the correction of procedural errors." Implicit within this language is the authority for a court to fashion a means to enforce the statute, a remedy if you will. As stated earlier, by amending R.C. 3319.11 the General Assembly evinced an intent to provide teachers holding limited contracts some measure of protection with respect to the nonrenewal of their contracts. * * *.
 * * *. Awarding back pay to Gerner without reinstating her does not threaten the authority vested in the board to ultimately decide whether to employ her as a teacher. It does, however, prompt the board to act diligently in providing Gerner an adequate statement of circumstances, which fulfills the purpose behind division (G)(2) of the statute.
See, also, Geib v. Triway Local Bd. of Edn. (1999), 84 Ohio St.3d 447, where the court in considering a case involving the board's failure to adequately describe the circumstances that led to a decision not to re-employ Geib awarded her back pay.
As applied to the instant case, we must first examine the collective bargaining agreement to determine whether it specifically makes provisions contrary to R.C. 3319.111. In relevant part, the collective bargaining agreement in this case states:
 Failure to follow EVALUATION AND SUPERVISION for limited contract teachers is subject to the procedures in O.R.C. 3319.11 and 3319.111, except as specifically modified herein, and is therefore not subject to Article VIII, GRIEVANCE PROCEDURE. (Emphasis added).
We are also concerned with whether the collective bargaining agreement or the statute directed the board's actions. R.C. 3319.111 requires the principal to evaluate a teacher at least twice annually, once by January 15th and again by April 1st, and requires the board to notify the teacher no later than April 30th of its intention not to renew the contract.
The collective bargaining agreement, however, states in Article XXXVI (C)(2):
 c. The teacher shall be given a chance to show if the performance problems noted on the Evaluation Form have been corrected. If the performance problem(s) is first identified in connection with the last observation or the second evaluation, an additional observation(s) shall be required in order to give the teacher a chance to show if the performance problems have been corrected, unless the continuing absence of the teacher precludes the additional observation(s) * * *.
* * *
 e. The principal's recommendation to renew or nonrenew a teacher's limited contract shall be made upon completion of the evaluation process and the teacher shall be provided with a copy.
The statute, on the other hand, does not mandate additional evaluations in order for a teacher to demonstrate that she has corrected performance problems. The additional observation as provided in the collective bargaining agreement then is a specific modification contrary to R.C.3319.111 and therefore, it controls the evaluation procedures.
In this case, the record reflects that Chaplouka evaluated Levin on January 20, 1998, and subsequently, on March 3, 1998, prior to the second evaluation, held a conference with her to address aspects of her job performance which reportedly did not meet expectations for a Mayfield teacher. At that time, Chaloupka provided her with a four-page written summary of job deficiencies which included eight instances of tardiness to school, two absences from staff meetings, tardiness to others, failure to submit eighteen weeks of lesson plans, and outlined other areas for professional development.
Chaloupka then conducted the second evaluation of Levin on March 31, 1998, and rated her Unsatisfactory in three categories specifically identifying problems with tardiness, attendance at staff meetings, and participation in staff development activities. Chaloupka also attached to her evaluation copies of a daily time schedule, a calendar of staff meetings, and the building policies and procedures. Chaloupka then recommended nonrenewal of Levin's contract, and the board notified Levin on April, 23, 1998 that it had decided to follow that recommendation.
In compliance with R.C. 3319.11, Levin requested a statement of circumstances as to the board's decision, and in response, the treasurer provided her with a four-page written statement. On May 11, 1998, Levin also requested a hearing. On June 10, 1998, Chaloupka conducted a final observation as required by Article XXXVI, Section C.2.c., of the collective bargaining agreement and found that Levin's performance was satisfactory and that she had improved in all three areas listed as deficiencies on the March 31, 1998 evaluation. Thereafter, on June 16, 1998, the board conducted a hearing and affirmed the nonrenewal of Levin's contract.
Given that the collective bargaining agreement specifically provides that if performance problems are first identified in connection with the second observation as occurred in this case, an additional observation is required to give Levin a chance to show that her performance problems had been corrected. Because that last observation occurred on June 10, 1998, after she had already been notified that her contract would not be renewed, the principal's recommendation had been made prior to completion of the evaluation process as described in the collective bargaining agreement.
Hence, we conclude that the trial court abused its discretion when it affirmed the decision of the Mayfield City School District Board of Education and determined that it had complied with the requirements set forth in R.C. 3319.111. Accordingly, we reverse that determination, and in accordance with Gerner and Geib, we remand this cause to the trial court for a determination of the amount of back pay owed to Levin.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A.J., CONCURS; DIANE KARPINSKI, J., CONCURRING IN PART AND DISSENTING IN PART (SEE CONCURRING AND DISSENTING OPINION ATTACHED)